DE BIASI v. NORMANDY WATER CO. (two cases).

(District Court, D. New Jersey. December 8, 1915.)

1. COURTS ⬟⇒322—JURISDICTION OF FEDERAL COURT—PLEADING—ALLEGATION OF CITIZENSHIP.
    An allegation in a complaint that defendant is a corporation duly organized and existing under the laws of a certain state is a sufficient allegation that it is a citizen of such state for the purpose of showing jurisdiction of a federal court.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. ⬟⇒322.]

2. MASTER AND SERVANT ⬟⇒250¾, New; vol. 116 Key-No. Series—MASTER'S LIABILITY FOR DEATH OF SERVANT—CONSTRUCTION OF STATUTES.
    The New Jersey Workmen's Compensation Act of April 4, 1911 (P. L. 1911, p. 134), provides two methods of compensation for the injury or death of an employé; that provided by section 1 being by an action for damages for negligence, its provisions being expressly made applicable to actions brought under the Death Act of March 3, 1848 (P. L. p. 151), while section 2 provides for an elective compensation in accordance with a schedule contained therein. Under such section the liability of the employer is fixed, regardless of his fault or negligence, and it is expressly provided that section 1 shall not apply where section 2 becomes operative, and that every contract of hiring shall be presumed to have been made with reference to section 2, and shall be governed thereby, unless otherwise provided in the contract, or a notice to that effect shall have been given by one party to the other. It is further provided that compensation thereunder shall not apply to alien dependents not residents of the United States. Held that, on the death of an employé, where nothing had been done to prevent the application of section 2, his administrator could not maintain an action against the employer under the Death Act, nor, where his only dependents were nonresident aliens, could he recover under the Compensation Act; the right being purely statutory.

3. TREATIES ⬟⇒8—CONSTRUCTION—RIGHT OF ACTION FOR WRONGFUL DEATH.
    Article 3 of the Treaty between the United States and the kingdom of Italy, proclaimed November 23, 1871 (17 Stat. 845), which provides that the citizens of each country shall receive in the states and territories of the other "the most constant protection and security for their persons and property and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives," does not confer on the nonresident alien relatives of a citizen of Italy a right of action for his death under the laws of a state which give such right of action to native relatives, but expressly deny it to nonresident aliens.
    [Ed. Note.—For other cases, see Treaties, Cent. Dig. § 18; Dec. Dig. ⬟⇒8.]

4. TREATIES ⬟⇒10—AMENDMENT—TIME OF TAKING EFFECT.
    An amendment to a treaty is not retroactive, and cannot revive a right of action which was expressly taken away by a state statute prior to its proclamation, although the statute, if enacted afterward, would have been in conflict with the amended treaty.
    [Ed. Note.—For other cases, see Treaties, Cent. Dig. § 10; Dec. Dig. ⬟⇒10.]

⬟⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Two actions by Antonio De Biasi, administrator of the estate of Giovanni Montanaro, deceased, against the Normandy Water Company. On motions to strike out complaints. Motions sustained.

Charles A. Ludlow, of New York City, for plaintiff.

McCarter & English, of Newark, N. J., for defendant.

RELLSTAB, District Judge. The defendant moves to strike out the complaints filed in two suits instituted against it by the administrator of Giovanni Montanaro, deceased. One of these suits is founded on an act of the New Jersey Legislature, entitled "An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect, or default," approved March 3, 1848 (P. L. N. J. 1848, p. 151), and the acts amendatory thereof (see 2 Comp. St. N. J. 1910, p. 1907). Hereafter this act will be referred to as the "Death Act," and the suit founded thereon as the one "to recover damages." The other suit is founded on an act of the same Legislature, entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employé in the course of employment, establishing an elective schedule of compensation, and regulating procedure for the determination of liability and compensation thereunder," approved April 4, 1911 (P. L. N. J. 1911, p. 134), and the acts amendatory thereof. Hereafter this act will be referred to as the "Compensation Act," and the suit founded thereon as the one "to recover compensation."

In substance, the allegations of the complaints, common to both suits, as far as are necessary to be stated on these motions, are that the deceased, previous to his death, was a resident of New Jersey and a citizen of the kingdom of Italy; that the administrator is a resident of New Jersey and a citizen of said kingdom; that the defendant "is a corporation duly organized and existing under the laws of the state of New Jersey"; that the deceased was an employé of the defendant, and that on the 1st of October, 1912, while he "was in the employ of the defendant, in and about the prosecution of its work at Convent, Morris county, New Jersey," he received the injuries which resulted in his death, which injuries were due, not to any fault of his, but solely to the negligence of the defendant; and that the deceased left him surviving a widow and four minor children.

In the suit to recover damages, the Death Act is set out at length, and it is alleged that the widow and minor children were dependent upon deceased for their support. The damages are laid at $5,000. In the suit to recover compensation, there are the further allegations that the death was not due to any willful act or intoxication on the deceased's part, and that the sum of $1,567.50 is due plaintiff pursuant to the provisions of said Compensation Act. In that suit, the declaration also sets up article 1 of the treaty between the United States of America and his majesty the king of Italy, concluded on February 25, 1913, amending article 3 of the treaty of February 26, 1871. This treaty article, thus amended, reads:

"The citizens of each of the high contracting parties shall receive in the states and territories of the other the most constant security and protection

for their persons and property and for their rights, including that form of protection granted by any state or national law which establishes a civil responsibility for injuries or for death caused by negligence or fault and gives to relatives or heirs of the injured party a right of action, which right shall not be restricted on account of the nationality of said relatives or heirs, and shall enjoy in this respect the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter."

The plaintiff concedes that the widow and children of deceased are alien dependents, not residents of the United States, that he has but one cause of action, and that both these suits cannot be maintained.

[1] A number of grounds are assigned why the complaints should be struck out. Those common to both complaints are: Their failure to show "that the matter in controversy arises between citizens of different states, * * * [or] between citizens of a state and foreign states, * * * [and] of what state the defendant is a citizen." The complaints, while alleging that the plaintiff is a citizen of a foreign state, fail to allege in terms that the defendant is a citizen of a state. To declare that the defendant is a citizen of New Jersey, without showing where it was incorporated, would be insufficient. A corporation can be a citizen of only the state which created it, and the allegations in the complaints that the defendant "is a corporation duly organized and existing under the laws of the state of New Jersey," in legal intendment, aver citizenship and are sufficient to confer jurisdiction on a federal court. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Knight v. Lutcher & Moore Lumber Co., 136 Fed. 404, 406, 69 C. C. A. 248; United States v. New York & O. S. S. Co., 216 Fed. 61, 132 C. C. A. 305; Chicago, R. I. & P. Ry. Co. v. Stephens, 218 Fed. 535, 134 C. C. A. 263, and cases cited.

[2] Now let us turn to those grounds of dismissal addressed to the complaints separately.

First, as to the suit to recover damages, founded upon the Death Act:

This act does not in terms exclude any widow or next of kin from its benefits, and in Cetofonte v. Camden Coke Co., 78 N. J. Law, 662, 75 Atl. 913, 27 L. R. A. (N. S.) 1058, the highest court of the state held that under such statute an administrator appointed in this state could maintain an action for the damages therein authorized, despite the fact that the decedent's widow (his sole beneficiary) was at the time of his death and at the beginning of the suit a nonresident alien. The defendant contends, however, that since the passage of the Compensation Act the personal representative of a deceased employé has no remedy in damages recoverable from an employer on the ground that the death of such employé was due to injuries received by him while at work for his employer, save that provided for in such Compensation Act, and that in the circumstances controlling the plaintiff's alleged cause of action he is prevented from bringing the present suit. This act went into effect July 4, 1911, and so far as pertinent to the present inquiry, provides:

## Section 1 (entitled "Compensation by Action at Law"):

Par. "1. When personal injury is caused to an employé by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employé was himself not willfully negligent at the time of receiving such injury, and the question of whether the employé was willfully negligent shall be one of fact to be submitted to the jury, subject to the usual superintending powers of a court to set aside a verdict rendered contrary to the evidence."

Par. "2. The right to compensation as provided by section 1 of this act shall not be defeated upon the ground that the injury was caused in, any degree by the negligence of a fellow employé, or that the injured employé assumed the risks inherent in or incidental to or arising out of his employment or arising from the failure of the employer to provide and maintain safe premises and suitable appliances, which said grounds of defense are hereby abolished."

Par. "4. The provisions of paragraphs 1, 2 and 3 shall apply to any claim for the death of an employé arising under an act entitled 'An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default,' approved March third, eighteen hundred and forty-eight, and the amendments thereof and supplements thereto."

Par. "5. In all actions at law brought pursuant to section 1 of this act, the burden of proof to establish willful negligence in the injured employé shall be upon the defendant."

## Section 2 (entitled "Elective Compensation"):

Par. "7. When employer and employé shall by agreement, either express or implied, as hereinafter provided, accept the provisions of section 2 of this act, compensation for personal injuries to or for the death of such employé by accident arising out of and in the course of his employment shall be made by the employer without regard to the negligence of the employer, according to the schedule contained in paragraph 11, in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury, and the burden of the proof of such fact shall be upon the employer."

Par. "8. Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in section 2 of this act, and an acceptance of all the provisions of section 2 of this act, and shall bind the employé himself and for compensation for his death shall bind his personal representatives, his widow and next of kin, as well as the employer, and those conducting his business during bankruptcy or insolvency."

Par. "9. Every contract of hiring made subsequent to the time provided for this act to take effect shall be presumed to have been made with reference to the provisions of section 2 of this act, and unless there be as a part of such contract an express statement in writing, prior to any accident, either in the contract itself or by written notice from either party to the other, that the provisions of section 2 of this act are not intended to apply, then it shall be presumed that the parties have accepted the provisions of section 2 of this act and have agreed to be bound thereby. In the employment of minors, section 2 shall be presumed to apply unless the notice be given by or to the parent or guardian of the minor."

Par. "10. The contract for the operation of the provisions of section 2 of this act may be terminated by either party upon sixty days' notice in writing prior to any accident."

Par. "12 (as amended April 17, 1914; N. J. P. L. p. 499). In case of death compensation shall be computed, but not distributed, on the following basis:
* * *

"For five dependents, fifty-five per centum of wages. * * *

"The term 'dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident or death, namely: * * * Wife, * * * children: * * * Provided, however,

that dependency shall be presumed as to a widow who was living with her husband at the time of his decease, and children under the age of eighteen years. * * *

"The compensation in case of death shall be subject to a maximum compensation of ten dollars per week and a minimum of five dollars per week: Provided, that if at the time of the injury the employé receive wages of less than five dollars per week, then the compensation shall be the full amount of such wages per week. This compensation shall be paid during three hundred weeks.

"Compensation under this schedule shall not apply to alien dependents not residents of the United States."

### Section 3 (entitled "General Provisions"):

Par. 24 (last clause). "Section 1 of this act shall not apply in cases where section 2 becomes operative in accordance with the provisions thereof, but shall apply in all other cases, and in such cases shall be in extension of the common law."

Par. "26. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

By the supplement of May 2, 1911 (P. L. N. J. p. 763), every contract of hiring in operation at the time the original act went into effect is declared to "be presumed to continue subject to the provisions of section 2 of the act to which this act is a supplement, unless either party shall, prior to accident, in writing, notify the other party to such contract" that such provisions are not intended to apply. With reference to this statute, this court, in Berton v. Tietjen & Lang Dry Dock Co., 219 Fed. 763, said:

"The effect of this statute is the incorporation into the relation of employer and employé of a new right in the latter and a new obligation upon the former, and in furtherance thereof it provides compensation to workmen who have sustained injuries in their employment. The scheme of this Workmen's Compensation Act is twofold—compensation through action at law, or by legislative schedule. While the act permits an election by either party (Nitram Co. v. Court of Common Pleas, 84 N. J. Law, 243, 245, 86 Atl. 435), the latter scheme is declared in force unless the parties have taken the prescribed steps to put the other into operation (Sexton v. Newark District Telegraph Co., 84 N. J. Law, 85, 86 Atl. 451). In the case of the former, the employer's liability arises only in case he has been negligent—actually or legally imputed—and the employé had not been willfully negligent at the time of such injury. In the case of the latter, the employer's liability is fixed, without his being in fault, where the employé is injured by 'accident arising out of and in the course of his employment * * * in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury.' P. L. N. J. 1911, p. 134, 136, § 2, par. 7; Bateman Mfg. Co. v. Smith, 85 N. J. Law, 409, 411, 89 Atl. 979.

"In the case at bar the plaintiff seeks the compensation fixed by the legislative schedule, and his right to such compensation, as already observed, does not depend upon the defendant's being at fault. The nature of the obligation thus imposed upon the employer is purely economic and sociological. It bears no relation whatever to the modern common-law theory underlying the redress of private wrongs. The award to the injured employé is based on his being injured while in the course of his employment, and in consequence of an accident arising out of such employment, and not on the fault of his employer (American Radiator Co. v. Rogge, 86 N. J. Law, 436, 92 Atl. 85, 87, 94 Atl. 85, and the amount thereof is ascertained on the basis of his wages, regardless of whether such award be commensurate with the injury suffered. A suit to recover such compensation cannot be said to be one founded or sounding in tort. The legislative act referred to expressly declares that every contract of hiring, made subsequently to the time the original act went into effect, shall.

be presumed to have been made with reference to such obligation; and by an amendment to such act, passed the same year (P. L. N. J. 1911, p. 763), all contracts of hiring made prior to such time are presumed to continue subject to such obligation unless either party, prior to the accident, shall have taken the prescribed steps to make such presumption inapplicable.

"Neither the pleadings, nor the testimony taken on the issues raised thereby, alleges or shows that any such steps were taken in the present case, and the result is that this obligation thus legislatively thrust upon the employer is a part of the contract of hiring. Gregutis v. Waclark Wire Works, 86 N. J. Law, 610, 92 Atl. 354. Such an obligation was unknown to either the common or maritime law, as they existed at the adoption of our federal Constitution or the passage of the first Judiciary Act; and, while critically considered, it might be more appropriately placed in a class by itself than be classified as contractual, yet this legislative classification must govern. American Radiator Co. v. Rogge, supra."

Both complaints in the instant cases allege that the relation of employer and employé existed between the defendant and the deceased, and that the decedent's death was due to injuries received in the course of such employment. In such circumstances, the scheme of compensation embodied in section 2 of the Compensation Act became operative and bound both decedent and defendant, unless either party had taken the steps prescribed by such act to make such scheme inapplicable. There is no allegation that such steps were taken, and it is conceded that none in fact was taken. It follows, therefore, that the employé could not have recovered damages in a common-law action for any injuries he might have sustained in the course of such employment, if he had survived such injuries, and that the only moneys recoverable for such injuries would have been the compensation prescribed in the schedule of payments in section 2 of the act. These limitations upon the employé's right to recover control the right of recovery by his personal representative in case he died in consequence of such injuries. The right to recover damages for injuries caused by the death of a human being is purely statutory. Myers v. Holborn (E. & A. N. J.) 58 N. J. Law, 193, 33 Atl. 389, 30 L. R. A. 345, 55 Am. St. Rep. 606; Dennick v. R. R. Co., 103 U. S. 11, 21, 26 L. Ed. 439; The Harrisburg, 119 U. S. 199, 204, 7 Sup. Ct. 140, 30 L. Ed. 358; Van Doren v. P. R. R., 93 Fed. 260, 264, 35 C. C. A. 282. The statute of New Jersey relied upon by the plaintiff in this case expressly limits such right of action to such wrongful acts or defaults "as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." Section 1. As the employé, if living, could not have maintained an action at law to recover damages for injuries thus sustained, but would have had to content himself with the compensation provided in such Compensation Act, his personal representative cannot; he having died in consequence of such injuries. The personal representative, therefore, must find his right, if any, to secure compensation for such alleged wrongful death, in said Compensation Act. This act, however, as noted, expressly excludes alien dependents nonresident of the United States from recovering any compensation in such cases. In Gregutis v. Waclark Wire Works, 86 N. J. Law, 610, 92 Atl. 354, the court of last resort in New Jersey held (headnotes):

"2. Where a complaint sets up a contract of hiring between employer and employé made subsequent to the taking effect of the Workmen's Compensation Act (P.·L. 1911, p. 134), and does not aver that the contract contained any express statement in writing that section 2 of the act was not intended to apply, nor that any written notice to that effect was given, it will be presumed that the parties accepted and were bound by the provisions of that section.

"3. Where a deceased employé by his agreement, either express or implied, had accepted and become bound by the provisions of section 2 of the Workmen's Compensation Act (P. L. 1911, p. 134), his personal representatives cannot maintain an action under the Death Act (P. L. 1848, p. 151; Comp. Stat. p. 1907) for damages for death, even though the only dependents decedent left surviving him were aliens not residents of the United States."

This case is directly in point and the New Jersey court's construction of these two statutes is binding on this court (Maiorano v. B. & O. R. R. Co., 213 U. S. 268, 29 Sup. Ct. 424, 53 L. Ed. 792; Boston Chamber of Commerce v. Boston, 217 U. S. 189, 30 Sup. Ct. 459, 54 L. Ed. 725) unless, as contended by the plaintiff, the treaties between the kingdom of Itāly and the United States secure greater rights to alien subjects of such kingdom.

[3] Article 3, the pertinent part of the treaty negotiated between the United States and the kingdom of Italy on February 26, 1871, proclaimed November 23, 1871 (17 Stat. 845), having reference to the rights of the citizens of Italy with respect to civil responsibility to them for injuries or death caused by fault, etc., and which was in force at the time of the passage of the Compensation Act and at the time the decedent sustained the injuries which resulted in his death, provides:

"The citizens of each of the high contracting parties shall receive, in the states and territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives, on their submitting themselves to the conditions imposed upon the natives." Treaties and Conventions of the United States (1776–1889) p. 581.

This treaty article was under consideration in Maiorano v. B. & O. R. R. Co., supra, and it was there held:

"By a fair construction, articles 2, 3, and 23 of the treaty with Italy of 1871 (17 Stat. 845) do not confer upon the nonresident alien relatives of a citizen of Italy a right of action for damages for his death in one of the states of this Union, although such an action is afforded by a statute of that state to native resident-relatives, and although the existence of such an action might indirectly promote his safety, and so held as to the statute of Pennsylvania, it having been so construed by the highest court of that state."

Consequently, the personal representative's right to recover damages for the alleged wrongful death of such decedent depends exclusively upon the legislation of the state in which such injuries were sustained, and which, as noted, excludes such recovery in behalf of alien dependents nonresident in the United States.

[4] The amendment to this treaty article, which was negotiated and proclaimed in 1913, heretofore set out, not being in existence at the time when the alleged causes of action accrued, has no bearing upon the instant case, as its provisions are not retroactive. Haver v. Yaker, 76 U. S. (9 Wall.) 32, 19 L. Ed. 571; Dooley v. United States, 182 U. S. 222, 230, 21 Sup. Ct. 762, 45 L. Ed. 1074. But the plaintiff's

alleged cause of action in this suit would not be cognizable in a federal court, though such treaty as amended in 1913 could be given a retroactive effect. Such effect, while it would invalidate such exclusion clause, could not revive the right of action under the Death Act, which, as noted, was taken away from an employé or his personal representative by such Compensation Act in all cases where section 2 of said act applied. In such cases, the only recovery left to the personal representative after the death of the employé, as well as to the employé, if living, is that provided in the schedules embodied in such Compensation Act.

Admittedly, the amount recoverable by the plaintiff in this case under section 2 of the Compensation Act is less than $3,000. Assuming, therefore, that by virtue of said amended treaty between the United States and the kingdom of Italy, the plaintiff had a right of action under the New Jersey Compensation Act, his showing that the amount in controversy, based on that statute, is less than $3,000 is fatal to the jurisdiction of the federal court. This treaty in terms declares that with regard to such "civil responsibility for injuries or for death caused by negligence or fault" the citizens of the parties to such treaty "shall enjoy * * * the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter." A citizen of the United States could not maintain an action in the federal court based on such statute unless the amount involved, exclusive of interest and costs, exceeded the sum or value of $3,000, and the same condition exists when the controversy "arises under the Constitution or laws of the United States or treaties made or which shall be made under their authority." Judicial Code, § 24, par. 1, Comp. St. 1913, § 991 (1). Therefore, however this exclusion clause of the Compensation Act may be treated —i. e., operative because it includes the plaintiff, or inoperative because overridden by the treaty of 1913—the right of recovery in this action on the Death Act is not cognizable in this court.

Second, as to the suit founded upon the Compensation Act:

As the right to maintain such an action has been considered in connection with the one founded on the Death Act, it is unnecessary to do more than to say that, as this suit is for an amount less than the minimum required to give federal jurisdiction over such controversy, it too fails on jurisdictional grounds.

The motions to strike out both complaints are granted.